IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| DAVID J. HYDE, D.D.S.,<br>*Plaintiff*,<br><br>v.<br><br>MARYLAND STATE BOARD OF DENTAL<br>EXAMINERS,<br>*Defendant*. | Case No. 1:16-cv-02489-ELH |

**MEMORANDUM OPINION**

David J. Hyde, D.D.S. filed a civil rights complaint (ECF 1-1) on July 7, 2016, against the Maryland State Board of Dental Examiners (the "Board"), alleging that the Board unlawfully revoked his dental license.[1] The suit was filed pursuant to 42 U.S.C. § 1983, asserting a violation of Hyde's due process rights under the Fifth and Fourteenth Amendments and an unlawful taking of a vested property right, without just compensation, in violation of the Fifth Amendment. *Id.* In addition, Hyde alleges violations of Article 24 of the Maryland Declaration of Rights and Article III, § 40 of the Maryland Constitution, as well as a common law claim for breach of contract. *Id.* Several exhibits are appended to the Complaint.

Dr. Hyde, who was initially licensed as a dentist in 1983, appears to have had a long history of interaction with the Board. More recently, he was charged in July 2012 with testing positive for cocaine. ECF 1-1, ¶ 13. And, after a hearing on January 2, 2013, the Board issued a written decision revoking Dr. Hyde's dental license. ECF 1-3 ("Decision"). Dr. Hyde claims

---

[1] Curiously, the civil cover sheet is docketed as ECF 1. The caption of the case and the opening paragraph refer to the Board as the sole defendant. However, in paragraph 11, in a section titled "The Parties," Hyde identified Friends Medical Laboratory Inc. ("Friends) as a party. He asserts that Friends was an agent of the Board and violated Hyde's rights. ECF 1 at 4. According to the docket, no summons was ever requested for Friends, nor was Friends ever served. Moreover, Hyde suggests that he plans to add Friends as a defendant. ECF 38 at 4 n.4. Therefore, I shall assume that the Board is currently the only defendant.

that the Board "wrongfully charged [him] and then revoked [his] dental license for violating a Consent Order that never existed." ECF 1-1, ¶ 1; *see also id.*, ¶ 13. Further, he asserts that drug tests were "manufactured" (*id.* ¶ 2) to "portray" him as a drug user. *Id.*, ¶ 3. And, Dr. Hyde, who is African American (ECF 1-1, ¶ 3), avers that the Board "has never conducted or acted similarly to any white dentist . . . ." *Id.*, ¶ 4.

The Board has moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and Fed. R. Civ. P. 12(b)(6) (ECF 17), supported by a memorandum of law (ECF 17-1) (collectively, "Motion") and one exhibit. ECF 17-2. It asserts, *inter alia*, that the Eleventh Amendment bars this suit. ECF 17 at 1. Dr. Hyde opposes the Motion (ECF 38, "Opposition"), supported by exhibits. ECF 38-1 to ECF 38-3. The Board has replied. ECF 41, "Reply."[2]

No hearing is necessary to resolve the Motion. *See* Local Rule 105.6. For the reasons that follow, I shall grant the Motion, without prejudice, and with leave to amend.

## I.     Factual Background[3]

Dr. Hyde "was a board certified dentist." ECF 1-1, ¶ 9. The Board is an administrative agency that "regulates the practice of dentistry and dental hygiene in the State of Maryland and falls under the authority of the State of Maryland." *Id.* ¶ 10. *See* Maryland Dentistry Act, Md. Code (2015 Repl. Vol.), § 14-101 *et seq.* of the Health Occupations Article ("H.O.").

Of relevance here, the Board is a unit within the Maryland Department of Health. H.O. § 4-201; *see also* Md. Code (2015 Repl. Vol.), § 2-106 (a)(9) of the Health-General Article

---

[2] The Court granted numerous extensions to both sides with respect to the briefing of the Motion. As a result, the Motion was not ripe until April 26, 2017. *See* ECF 41.

[3] The factual allegations are derived largely from the Complaint. Based on the procedural posture of the case, I must assume the truth of any well pleaded factual allegations. *See E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011).

("H.G.").[4] In addition to issuing dental licenses (H.O. §§ 1-601; 4-101), the Board investigates complaints and may take disciplinary action against a licensee if the conduct in question is grounds for disciplinary action under the Maryland Dentistry Act. *See generally* H.O. §§ 14-401 – 14-416. Such action may include a reprimand, probation, suspension of a license, or revocation of a license. H.O. § 14-404.

Hyde alleges that on July 11, 2012, "the State charged [him] with having tested positive for cocaine . . . ." ECF 1-1, ¶ 13.[5] Dr. Hyde claims that, after a hearing on January 2, 2013, the Board revoked his license for violation of a consent order that "does not exist. . . ." ECF 1-1, ¶ 13. *See also id.* ¶ 14.

According to plaintiff, the Board "acted intentionally or maliciously and ultra vires" by revoking his license. *Id.*, ¶ 14. Further, he claims that the Board violated his civil rights by using "secret error prone, unreliable or manufactured tests" to "suggest he failed a drug test." *Id.*, ¶ 2. In addition, plaintiff claims that the Board and its agents, including Friends Medical Laboratory Inc. ("Friends"), used "clandestine tests" to "either manufacture evidence or use the negative result … to 'set him up and portray [him] as a drug user.'" *Id.*, ¶ 3. Dr. Hyde, who is African American, avers that this is "prima facie evidence of biased and discriminatory conduct." *Id.* He also alleges: "The [Board]'s false portrayal of [his] failed drug tests and findings in order to [i]nitiate or 'trump up charges' against him [and] then revoke his license . . . defamed, vilified and ostracized him within the dental and social community where he resides and practices." *Id.*, ¶ 20.

---

[4] Effective July 1, 2017, the Department changed its name from the Department of Health and Mental Hygiene to the Department of Health. (Add Cite)

[5] According to plaintiff's own exhibit, ECF 1-2, titled "Notice of Charges Under Maryland Dentistry Act And Violation of Probation," it was the Board that charged Dr. Hyde.

The Board asserts that on November 30, 1999, it "entered into" a consent order with Dr. Hyde "based on unprofessional conduct." ECF 17-1 at 4. The Board maintains that on August 17. 2005, Dr. Hyde "agreed" to a second consent order "suspending his license for one year." *Id.*; *see also* ECF 1-3 at 1. Although the Board did not submit copies of these consent orders, they are discussed in the Board's Decision (ECF 1-3), issued on July 2, 2013.

The Decision states that as a condition of the first consent order, Dr. Hyde "agreed to a thirty-day suspension of his license and to comply with an agreement with the Dental Well Being Committee." ECF 1-3 at 1.[6] Further, the Decision states, in part, ECF 1-3 at 1-2:

> On November 30, 1999, the [Board] entered into a Consent Order with [Dr. Hyde], based on unprofessional conduct regarding a female employee. He agreed to a thirty-day suspension of his license and to comply with an agreement with the Dental Well Being Committee ("DWBC"). After failure to comply with various conditions of the agreement, the Board suspended Dr. Hyde's license for 45 days and ordered that he undergo a drug screen as required by DWBC. After full compliance, he was placed on three years' probation with conditions. On March 25, 2001, in an Order for Reinstatement and Probation, the Board ordered that Dr. Hyde's license be reinstated and that he be placed on probation for five years subject to conditions. On July 12, 2004, the Board suspended Dr. Hyde's license after he tested positive for cocaine and it was reported that he was not able to safely practice dentistry.
>
> On August 17, 2005, in the Consent Order, suspension was continued on Dr. Hyde's license for one year. On April 19, 2006, after the Board was informed that Dr. Hyde had not complied with all required drug testing and that he had tested positive for cocaine, it revoked his license. In a September 26, 2006 Order, the Board continued the revocation of Dr. Hyde's license based on a hair sample that had tested positive for cocaine. Around July 13, 2009, the Board received an application for dental licensure from Dr. Hyde, and after meeting with the Board, he signed a three-year contract with DWBC subject to conditions. After failing to comply with conditions of his license . . . probation, the DWBC recommended a five-day evaluation at an inpatient treatment center for professionals. On December 10, 2011, the evaluating center reported that Dr. Hyde had relapsed in his cocaine addiction and that he should spend 90 days in an inpatient program. Instead, the DWBC recommended Intensive Outpatient Treatment, 3-4 days per

---

[6] As discussed, *infra*, a court may properly consider documents that are "explicitly incorporated into the complaint by reference and those attached to the complaint as exhibits...." *Goines v. Valley Cmty, Servs, Bd.*, 822 F.3d 159, 166 (4th Cir. 2016).

-4-

week at a specific outpatient clinic, continued group therapy, and after completion of the IOPT, 2-3 urines per week, continued outpatient individual therapy, and mandatory 12-step meetings, at least 3 times per week. Dr. Hyde tested positive for cocaine on three occasions, in violation of his DWBC Agreement, failed to submit ongoing quarterly progress reports on a regular basis in violation of his Consent Order, and failed to ensure that his employer submitted regular quarterly reports.

Any adverse action taken by the Board against a licensee is subject to judicial review in a circuit court of Maryland. *See* H.O. § 4-319; Md. Code (2014 Repl. Vol.), State Government Article ("S.G.") § 10-222; Maryland Rule 7-203. Hyde noted an appeal from the Board's Decision. To my knowledge, the matter is currently pending before the Maryland Court of Special Appeals. *See* Appeal No. 14-02618, *David Hyde v. Maryland State Board of Dental Examiners*; ECF 17-1 at 5.[7]

Additional facts are included in the Discussion.

## II.  Standard of Review

Defendant has advanced several grounds in support of its Motion. I focus here on its claim under the Eleventh Amendment.

It is not clear whether a motion to dismiss based on the Eleventh Amendment is properly considered pursuant to Rule 12(b)(1) or Rule 12(b)(6). *See Strong v. Swaim-Stanley*, WMN-12-cv-1924, 2012 WL 4058054 (D. Md. Sept. 13, 2012). Judge Titus addressed this uncertainty in *Beckham v. National R.R. Passenger Corp.*, 569 F. Supp. 2d 542 (D. Md. 2008). He said, *id.* at 548 (internal citations omitted, alteration added):

> [T]he Eleventh Amendment limits the ability of a federal district court to exercise its subject-matter jurisdiction over an action brought against a state or one of its entities. As such, although Eleventh Amendment immunity is not a "true limit" on

---

[7] As discussed, *infra*, "[a] court may take judicial notice of docket entries, pleadings and papers in other cases without converting a motion to dismiss into a motion for summary judgment." *Brown v. Ocwen Loan Servicing, LLC*, PJM-14-3454, 2015 WL 5008763, at *1 n.3 (D. Md. Aug. 20, 2015), *aff'd*, 639 Fed. App'x. 200 (4th Cir. 2016).

this Court's subject matter jurisdiction, the Court concludes that it is more appropriate to consider this argument under Fed. R. Civ. P. 12(b)(1) because it ultimately challenges this Court's ability to exercise its Article III power.

Judge Titus's reasoning is persuasive. Therefore, I shall consider the Board's Eleventh Amendment challenge under Rule 12(b)(1). *See also Abril v. Com. Of Virginia*, 145 F.3d 182, 184 (4th Cir. 1998) (affirming the district court's dismissal of a claim barred by state sovereign immunity under Rule 12(b)(1)).

Under Rule 12(b)(1), the plaintiff bears the burden of proving, by a preponderance of evidence, the existence of subject matter jurisdiction. *See Demetres v. East West Const., Inc.*, 776 F.3d 271, 272 (4th Cir. 2015); *see also Ergashov v. Glob. Dynamic Transportation, LLC*, __Fed. App'x __, 2017 WL 715075, at *1 (4th Cir. Feb. 23, 2017) (per curiam); *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999). A challenge to subject matter jurisdiction under Rule 12(b)(1) may proceed "in one of two ways": either a facial challenge, asserting that the allegations pleaded in the complaint are insufficient to establish subject matter jurisdiction, or a factual challenge, asserting "'that the jurisdictional allegations of the complaint [are] not true.'" *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009) (citation omitted) (alteration in original); *see also Buchanan v. Consol. Stores Corp.*, 125 F. Supp. 2d 730, 736 (D. Md. 2001).

In a facial challenge, "the facts alleged in the complaint are taken as true, and the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction." *Kerns*, 585 F.3d at 192; *see also Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). In a factual challenge, on the other hand, "the district court is entitled to decide disputed issues of fact with respect to subject matter jurisdiction." *Kerns*, 585 F.3d at 192. In that circumstance, the court "may regard the pleadings as mere evidence on the issue and may consider evidence outside the pleadings without converting the proceeding to one for summary

judgment." *Velasco v. Gov't of Indonesia*, 370 F.3d 392, 398 (4th Cir. 2004); *see also Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991). Here, with respect to the contention that plaintiff's claims are barred by Eleventh Amendment immunity, the Board seems to raise a facial challenge. Therefore, I shall assume the truth of Dr. Hyde's allegations.

Under limited exceptions, a court may consider documents beyond the complaint without converting the motion to dismiss to one for summary judgment. *Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 508 (4th Cir. 2015). A court may properly consider documents that are "explicitly incorporated into the complaint by reference and those attached to the complaint as exhibits...." *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016) (citations omitted); *see U.S. ex rel. Oberg v. Pennsylvania Higher Educ. Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014) (quoting *Philips v. Pitt Cty Memorial Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009)); *Anand v. Ocwen Loan Servicing, LLC*, 754 F.3d 195, 198 (4th Cir. 2014); *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004), *cert. denied*, 543 U.S. 979 (2004); *Phillips v. LCI Int'l Inc.*, 190 F.3d 609, 618 (4th Cir. 1999).

However, "before treating the contents of an attached or incorporated document as true, the district court should consider the nature of the document and why the plaintiff attached it." *Goines*, 822 F.3d at 167 (citing *N. Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 455 (7th Cir. 1998)). "When the plaintiff attaches or incorporates a document upon which his claim is based, or when the complaint otherwise shows that the plaintiff has adopted the contents of the document, crediting the document over conflicting allegations in the complaint is proper." *Goines*, 822 F.3d at 167. Conversely, "where the plaintiff attaches or incorporates a

document for purposes other than the truthfulness of the document, it is inappropriate to treat the contents of that document as true." *Id.*

A court may also "consider a document submitted by the movant that was not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity." *Goines*, 822 F.3d at 166 (citations omitted); *see also Int'l Longshoreman's Ass'n., Local 333 v. Int'l Longshoremen's Ass'n., AFL-CIO*, __Fed. Appx.__, 2017 WL 1628979 (4th Cir. May 2, 2017) (per curiam); *Kensington Volunteer Fire Dep't. v. Montgomery Cnty.*, 684 F.3d 462, 467 (4th Cir. 2012). To be "integral," a document must be one "that by its 'very existence, and not the mere information it contains, gives rise to the legal rights asserted.'" *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011) (citation omitted) (emphasis in original).

Moreover, "[a] court may take judicial notice of docket entries, pleadings and papers in other cases without converting a motion to dismiss into a motion for summary judgment." *Brown v. Ocwen Loan Servicing, LLC*, PJM-14-3454, 2015 WL 5008763, at *1 n.3 (D. Md. Aug. 20, 2015), *aff'd*, 639 Fed. App'x. 200 (4th Cir. 2016). *Cf. Anderson v. Fed. Deposit Ins. Corp.*, 918 F.2d 1139, 1141 n. 1 (4th Cir. 1990) (holding that a district court may "properly take judicial notice of its own records"). In addition, "a court may properly take judicial notice of 'matters of public record' and other information that, under Federal Rule of Evidence 201, constitute 'adjudicative facts.'" *Goldfarb*, 791 F.3d at 508; *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Katyle v. Penn Nat'l Gaming, Inc.,* 637 F.3d 462, 466 (4th Cir. 2011), *cert. denied,* 565 U.S. 825 (2011); *Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).

Pursuant to Fed. R. Evid. 201, a court may take judicial notice of adjudicative facts if they are "not subject to reasonable dispute," in that they are "(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." However, "these facts [must be] construed in the light most favorable" to the non-movant. *Clatterbuck v. City of Charlottesville,* 708 F.3d 549, 557 (4th Cir. 2013) (abrogated on other grounds by *Reed v. Town of Gilbert, Ariz.*, __U.S. __, 135 S. Ct. 2218 (2015), as recognized in *Cahaly v. Larosa*, 796 F.3d 399 (4th Cir. 2015)).

Hyde attached two documents to his Complaint. *See* ECF 1-2 ("Notice Of Charges…"); ECF 1-3 ("Final Decision And Order"). They are integral to the allegations in the Complaint and may be considered at this juncture.

Two of the three exhibits attached to Hyde's Reply (ECF 38-1; ECF 38-2) are duplicates of the exhibits attached to the Complaint. As indicated, under the principles articulated above, I may consider these exhibits. The third exhibit (ECF 38-3) is an article written in 1994 about a defamation suit brought against two people who were then members of the Board. This article is not integral to the Complaint and, under the principles articulated above, it may not be considered at this juncture.

The Board submitted as an exhibit to its Motion the opening brief submitted by Dr. Hyde in his appeal to the Maryland Court of Special Appeals. ECF 17-2. The Court may take judicial notice of this submission.

### III.  Discussion

The Board argues, *inter alia*, that the "Eleventh Amendment to the United States Constitution bars this lawsuit against the Board, an agency of the State of Maryland." ECF 17-1

at 1. Further, the Board asserts: "The State of Maryland has not waived its immunity from suit in federal court, and Congress has not abrogated [sic] that immunity." *Id.* at 7.

In his Opposition, Dr. Hyde maintains that the Eleventh Amendment does not bar suit for "Ultra Vires Acts." ECF 38 at 3. He contends that "[t]he President of the Board of Dental Examiners and the individual board members, including Friends" are subject to suit under 42 U.S.C. § 1983. *Id.* He also asserts: "Injunctive relief does not provide the same immunity under the 11th Amendment to the Board as it does for damages…." *Id.* at 10. Moreover, Dr. Hyde insists, without reference to authority, that Maryland has waived its right to sovereign immunity as to the State law claims. ECF 38 at 3. In addition, Hyde indicates that he will seek leave to amend the complaint "to add the president of the Board in his individual capacity . . . as well as add the Friends Laboratory as a defendant." *Id.* at 4 n. 4.

The Eleventh Amendment provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or subjects of any Foreign State." The Eleventh Amendment did not create sovereign immunity. Rather, it preserved the sovereign immunity that the states enjoyed prior to the formation of the Union. *See Alden v. Maine*, 527 U.S. 706, 724 (1999); *see also Sossamon v. Texas*, 563 U.S. 277, 284 (2011). The preeminent purpose of state sovereign immunity is "to accord states the dignity that is consistent with their status as sovereign entities...." *Fed. Mar. Comm'n v. S.C. State Ports Auth.*, 535 U.S. 743, 760 (2002).

Thus, states enjoy immunity from suits brought in federal court by their own citizens, even though the text of the Eleventh Amendment does not explicitly address such a scenario. *See Hans v. Louisiana*, 134 U.S. 1, 3 (1890); *see also Board of Trustees of University*

of Alabama v. Garrett*, 531 U.S. 356, 363 (2001) ("The ultimate guarantee of the Eleventh Amendment is that nonconsenting states may not be sued by private individuals in federal court."). In other words, under the Eleventh Amendment, a private individual is barred from bringing a suit against a state in federal court to recover damages, unless an exception to sovereign immunity applies. *See Coleman v. Court of Appeals of Md.*, 556 U.S. 30, 35 (2012) ("A foundational premise of the federal system is that States, as sovereigns, are immune from suits for damages, save as they elect to waive that defense."); *Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247 (2011); *see also Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54–55 (1996) ("For over a century we have reaffirmed that federal jurisdiction over suits against unconsenting States was not contemplated by the Constitution when establishing the judicial power of the United States.") (internal quotation marks and citation omitted).

Of import here, sovereign immunity also bars suit against an instrumentality of a state, sometimes referred to as an "arm of the state," absent waiver or a valid congressional abrogation of sovereign immunity. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101–02 (1984) ("It is clear, of course, that in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment."); *see also Regents of Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997); *McCray v. Md. Dep't of Transp., Md. Transit Admin.*, 741 F.3d 480, 483 (4th Cir. 2014); *Bland v. Roberts*, 730 F.3d 368, 389 (4th Cir. 2013); *Constantine v. Rectors and Visitors of George Mason Univ.*, 411 F.3d 474, 479 (4th Cir. 2005).

The Board is an entity or arm of the State of Maryland. *See* H.O. § 4-201. According to H.G. § 2-106(a)(9), the Board is a unit of the Maryland Department of Health ("DOH"). And, according to H.G. § 2-101, as amended by 2017 Maryland Laws, Ch. 214 (S.B. 82) (effective

July 1, 2017), DOH is a "principal department of the State government." Therefore, suit against the Board is tantamount to suit against the State.

The Court of Appeals for the Fourth Circuit has noted three exceptions to the Eleventh Amendment's prohibition of suits against a state or an arm of the state. In *Lee-Thomas v. Prince George's Cnty. Pub. Sch.*, 666 F.3d 244 (4th Cir. 2012), the Court said, *id.* at 249 (internal quotations omitted):

> First, Congress may abrogate the States' Eleventh Amendment immunity when it both unequivocally intends to do so and acts pursuant to a valid grant of constitutional authority. *Bd. of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001) .... Second, the Eleventh Amendment permits suits for prospective injunctive relief against state officials acting in violation of federal law. *Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 437 (2004) .... Third, a State remains free to waive its Eleventh Amendment immunity from suit in a federal court. *Lapides v. Bd. of Regents of Univ. Sys. of Ga.,* 535 U.S. 613, 618 (2002).

None of the exceptions is applicable here.

First, as noted, Congress has the power to abrogate a state's sovereign immunity, but must do so pursuant to a valid grant of constitutional authority. *Garrett*, 531 U.S. at 363; *Lee-Thomas*, 666 F.3d at 249. This exception is inapplicable because, as noted by the Board, the Supreme Court has made clear that Congress did not intend to abrogate a state's Eleventh Amendment immunity under § 1983. *See Quern v. Jordan,* 440 U.S. 332, 341 (1979). This exception is also inapplicable as to Dr. Hyde's State law claims.

Second, although Dr. Hyde seeks injunctive relief (ECF 1-1 at 2-3, 11-12), this exception is not applicable "because the complaint does not name as defendants any officials of the State of Maryland." *Lee-Thomas*, 666 F.3d at 249. *See, e.g.*, *Edelman v. Jordan*, 415 U.S. 651, 676 (1974); *Ex Parte Young*, 209 U.S. 123 (1908); *see also Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 269 (1997) (recognizing exception to Eleventh Amendment immunity for certain suits seeking declaratory and injunctive relief against state officers in their individual capacities).

Third, although a state may waive its Eleventh Amendment sovereign immunity and permit suit in federal court, *see Lapides v. Bd. of Regents of Univ. Sys. of Ga.,* 535 U.S. 613, 618 (2002); *Lee-Thomas*, 666 F.3d at 249, Maryland has not waived its Eleventh Amendment immunity to a suit of this kind in federal court. The test to determine whether a State has waived its immunity from suit in federal court is a "stringent" one. *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 240 (1985), *superseded on other grounds, as recognized in Lane v. Pena*, 518 U.S. 187, 198 (1996). Under *Atascadero*, a court may find that a state has waived its Eleventh Amendment immunity "only where stated by the most express language or by such overwhelming implication from the text as will leave no room for any other reasonable construction." *Id.* (internal quotation marks and alteration omitted); *accord Lee-Thomas*, 666 F.3d at 250-51.

The Maryland Tort Claims Act ("MTCA"), S.G. §§ 12-101 *et. seq.*, offers "a limited waiver of sovereign immunity" and is "the sole means by which the State of Maryland may be sued in tort." *Swagler v. Harford Cty.,* RDB-08-2289, 2009 WL 1575326, at *4 (D. Md. June 2, 2009), *aff'd in part, rev'd in part on other grounds sub nom. Swagler v. Neighoff,* 398 F. App'x 872 (4th Cir. 2010) (per curiam); *see Condon v. Md.-Univ. of Md.*, 332 Md. 481, 492, 632 A.2d 753, 758 (1993); *Mitchell v. Housing Auth. of Baltimore City*, 200 Md. App. 176, 201–202, 26 A.3d 1012, 1027–28 (2011). In tort cases, "the immunity of the State and of its units is waived as to a tort action, *in a court of the State*," provided that the State's liability may not exceed $200,000. S.G. § 12–104 (emphasis added). Moreover, S.G. § 12-103(2) provides thatm under the MTCA, Maryland does not "waive any right or defense of the State or its units, officials, or employees in an action in a court of the United States or any other state, including any defense that is available under the 11th Amendment to the United States Constitution."

The Fourth Circuit has explained, *Weller v. Dep't of Soc. Servs. for City of Baltimore*, 901 F.2d 387, 397–98 (4th Cir. 1990) (citation omitted): "The waiver of sovereign immunity in the Maryland Torts [sic] Claims Act clearly limits the state's waiver of immunity to actions brought in the Maryland state courts.... A state's waiver of immunity from suit in state court 'is not enough to waive the immunity guaranteed by the Eleventh Amendment.'"

As to contract claims, S.G. § 12-201(a) provides that "the State, its officers, and its units may not raise the defense of sovereign immunity in a contract action, *in a court of the State*, based on a written contract that an official or employee executed for the State or 1 of its units while the official or employee was acting within the scope of the authority of the official or employee." (Emphasis added). However, Judge Russell of this Court has aptly said: "Although the State expressly waived sovereign immunity in contract actions, the General Assembly limited this waiver to state courts only." *Davenport v. Anne Arundel Cty. Bd. of Educ.*, No. CIV. GLR-12-1335, 2012 WL 6043641, at *7 (D. Md. Dec. 4, 2012) (citing S.G. § 12-201(a)); *see also State v. Sharafeldin,* 382 Md. 129, 854 A.2d 1208, 1219 (2004) ("There was clearly no intent on the part of the Legislature to waive the State's Eleventh Amendment immunity in actions in Federal court…. Section 12–201 is plainly limited to an action in a Maryland Court.").

Furthermore, to the extent that Dr. Hyde asserts claims under 42 U.S.C. § 1983, the Supreme Court has made clear that Congress did not intend to abrogate a state's Eleventh Amendment immunity under § 1983. *See Quern,* 440 U.S. at 341. Moreover, even if Maryland had waived its immunity, it is well established that states and their agencies are not considered "persons" under 42 U.S.C. § 1983. As such, states or their agencies are not subject to federal civil rights claims under the statute. *Will v. Michigan Dep't. of State Police*, 491 U.S. 58, 65 (1989).

The Board also argues that Dr. Hyde's suit is subject to dismissal pursuant to *Younger v. Harris*, 401 U.S. 37 (1971), "because there is a pending, ongoing state judicial proceeding that serves an important State interest in protecting the public health, safety and welfare in Maryland." ECF 17 at 1. In addition, the Board argues that "Dr. Hyde's complaint was not timely filed," because the Decision was issued on July 2, 2013. *Id.* Because I conclude that the Eleventh Amendment bars suit against the Board, I need not reach these contentions.

## IV. Conclusion

For the reasons stated above, I shall GRANT defendant's Motion to Dismiss (ECF 17), without prejudice.

Plaintiff shall be afforded 21 days from the date of entry of this Order to file an amended complaint. If the suit is not amended by that date, the Clerk shall be directed to CLOSE the case.

An Order follows.

Date: July 7, 2017

/s/
Ellen L. Hollander
United States District Judge