IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DAVID J. HYDE, DDS,

    *Plaintiff,*

v.

    Civil Action No. ELH-16-2489

MARYLAND STATE BOARD OF
DENTAL EXAMINERS et al.,

    *Defendants.*

## MEMORANDUM OPINION

Plaintiff David J. Hyde, DDS filed a civil rights action on July 7, 2016, against the Maryland State Board of Dental Examiners (the "Board"), alleging that the Board unlawfully revoked his dental license. ECF 1-1 (Complaint). The suit was filed, *inter alia*, pursuant to 42 U.S.C. § 1983, asserting a violation of Dr. Hyde's due process rights under the Fifth and Fourteenth Amendments and the unlawful taking of a vested property right, without just compensation, in violation of the Fifth Amendment. *See id.* In addition, Hyde alleged violations of Article 24 of the Maryland Declaration of Rights and Article III, § 40 of the Maryland Constitution, as well as a common law claim for breach of contract. *Id.*

Plaintiff's Complaint was dismissed, without prejudice, by Order of July 7, 2017 (ECF 43), for the reasons set forth in a Memorandum Opinion of the same date. *See* ECF 42. Thereafter, plaintiff filed a First Amended Complaint. ECF 46 (Amended Complaint).[1] He

---

[1] I granted Dr. Hyde 21 days in which to file an amended complaint. ECF 43. Dr. Hyde endeavored to amend the suit on July 28, 2017, but his filing was defective. ECF 44. He was notified of the error by the Clerk on July 31, 2017 (ECF 45), but he did not properly file the Amended Complaint until August 28, 2017. ECF 46. The Board moved to strike the Amended Complaint as untimely filed. By Order of September 18, 2017 (ECF 48), I denied that motion.

asserted the same claims against the Board that were alleged in the initial Complaint. *See* ECF 46 at 10-12. And, Hyde named two additional defendants: Ngoc Q. Chu, DDS, the President of the Board, and Friends Medical Laboratory, Inc. ("Friends"), which conducted drug testing of plaintiff that led to the Board's revocation of Hyde's dental license. *Id.* ¶¶ 8-9. According to plaintiff, Friends acted as an agent of the Board. *Id.* ¶ 9.

Count One (*id.* ¶¶ 29-31) is lodged under 42 U.S.C. § 1983 against Chu and the State. Although no constitutional provision is referenced, plaintiff incorporates earlier assertions of violations of his rights under the Fourth, Fifth, and Eighth Amendments. *See*, *e.g.*, *id.* ¶¶ 11, 29. Count Two asserts a violation of due process, but no specific defendant is identified. *Id.* ¶¶ 32-34. Count Three appears to be lodged against the Board, and asserts that the Board deprived Dr. Hyde of due process by taking property without just compensation, and impairing his business relationships. *Id.* ¶¶ 35-37. Count Four is lodged against the State, asserting that the Board has breached a contract. *Id.* ¶¶ 38-41. In Count Five, asserted against Friends, Dr. Hyde claims a violation of the Maryland Consumer Protection Act, Md. Code (2013 Repl. Vol., 2017 Supp.), §§ 13-101 *et seq.* of the Commercial Law Article ("C.L."). *Id.* ¶¶ 42-43. In Count Six, filed against Dr. Chu and Friends, Dr. Hyde alleges fraud and deceit. *Id.* ¶¶ 44-48. Count Seven asserts a claim of negligence against Friends.[2] *Id.* ¶¶ 49-52. Count Eight seeks injunctive relief as to Dr. Chu and the Board. *Id.* ¶¶ 53-55.

In the suit, Hyde asserts that the "Board is an instrumentality of the State of Maryland . . . ." ECF 46, ¶ 7. By Order of April 11, 2018 (ECF 52), I granted the Board's motion to dismiss, pursuant to the Eleventh Amendment. ECF 47.

---

[2] Curiously, ¶ 50 identifies the plaintiff as "DeReuter."

Friends has moved to dismiss the Amended Complaint, pursuant to Fed R. Civ. P. 12(b)(6). ECF 61. The motion is supported by a memorandum of law (ECF 61-1) (collectively, "Friends Motion"). Friends contends that the Maryland statute of limitations bars plaintiff's claims. ECF 61-1 at 1. Dr. Hyde opposes the Friends Motion. ECF 69. Friends has replied. ECF 72.

In addition, Dr. Chu has moved to dismiss the Amended Complaint, pursuant to Fed R. Civ. P. 12(b)(6) and Fed. R. Civ. P. 12(b)(1). ECF 63. The motion is supported by a memorandum of law (ECF 63-1) (collectively, "Chu Motion"). Dr. Chu also argues that plaintiff's claims against him are time-barred. ECF 63-1 at 3-5. Alternatively, he asserts, *inter alia*, that absolute immunity and the Eleventh Amendment bar plaintiff's suit against him. *Id*. at 5-9. Dr. Hyde opposes the Chu Motion. ECF 69. Dr. Chu has replied. ECF 71.

No hearing is necessary to resolve the motions. *See* Local Rule 105.6. For the reasons that follow, I shall grant the motions.

## I.    Factual Background

Dr. Hyde "was a board certified dentist." ECF 46, ¶ 6. The Board is an administrative agency of the State of Maryland, which "regulates the practice of dentistry and dental hygiene in Maryland." *Id.* ¶ 7. *See* Maryland Dentistry Act, Md. Code (2015 Repl. Vol., 2017 Supp.), § 14-101 *et seq.* of the Health Occupations Article ("H.O."). At the relevant time, Dr. Chu was President of the Board. ECF 46, ¶ 8.

Of significance here, the Board is a unit within the Maryland Department of Health. H.O. § 4-201; *see also* Md. Code (2015 Repl. Vol., 2017 Supp.), § 2-106 (a)(9) of the Health-

General Article.[3]  In addition to issuing dental licenses (H.O. §§ 1-601; 4-101), the Board investigates complaints and may take disciplinary action against a licensee if the conduct in question provides grounds for disciplinary action under the Maryland Dentistry Act.  *See generally* H.O. §§ 14-401-14-416.  Such action may include a reprimand, probation, suspension, or revocation of a dental license.  H.O. § 14-404.

Dr. Hyde has had a long history of interaction with the Board, dating to about 1999.  *See Hyde v. Md. State Bd. of Dental Exam'rs*, No. 2618, Sept. Term 2014, 2018 WL 526662, at *2-3 (Md. Court of Special Appeals, Jan. 24, 2018).[4]  In May 2010, he entered into a confidential consent agreement with the Board that required, *inter alia*, that he undergo drug screening.  ECF 46, ¶ 10.  Plaintiff complains that defendants have mischaracterized the consent agreement as a consent order.  In any event, Friends performed drug testing of Dr. Hyde for about two years, pursuant to the consent agreement.  *Id.*  In doing so, Dr. Hyde contends that Friends acted as an agent of the Board.  *Id.*  Moreover, plaintiff claims that he "was put through secret error prone and unreliable tests," and he claims that the testing "should have exonerated" him.  *Id.* ¶ 2.

On September 11, 2012, as a result of drug testing performed by Friends, the Board claimed Dr. Hyde tested positive for cocaine, in violation of the terms of the consent agreement.  *Id.* ¶ 11.  The Board conducted an evidentiary hearing on January 2, 2013, in regard to the allegations.  *See* ECF 1-1, ¶ 13.  The Board issued a final decision and order on July 2, 2013,

---

[3] Effective July 1, 2017, the Department changed its name from the Department of Health and Mental Hygiene to the Department of Health.  2017 Maryland Laws, Ch. 214 (S.B. 82).

[4] "A court may take judicial notice of docket entries, pleadings and papers in other cases without converting a motion to dismiss into a motion for summary judgment." *Brown v. Ocwen Loan Servicing, LLC*, PJM-14-3454, 2015 WL 5008763, at *1 n.3 (D. Md. Aug. 20, 2015), *aff'd*, 639 Fed. App'x. 200 (4th Cir. 2016).

finding Dr. Hyde in violation of H.O. § 4-315(a)(31). *Id.* ¶ 12. And, it revoked Dr. Hyde's dental license for five years, for "failing to comply with a 'Board order.'" *Id.* ¶¶ 12, 13; *see also* ECF 1-3 ("Board Decision").

On August 1, 2013, Dr. Hyde sought judicial review in the Circuit Court for Montgomery County. *See* H.O. § 4-319; Md. Code (2014 Repl. Vol., 2017 Supp.), § 10-222 of the State Government Article; Maryland Rule 7-203. By order of January 14, 2015, the circuit court remanded the case to the Board. *See Hyde v. Md. State Bd. of Dental Exam'rs*, No. 379753-V, Docket No. 38. Both parties appealed the circuit court's ruling to the Maryland Court of Special Appeals. *See Hyde*, 2018 WL 526662, at *1.

On appeal, the Maryland Court of Special Appeals addressed the following questions: "(1) Whether Dr. Hyde waived arguments regarding the Board's authority to sanction a violation of a consent agreement as a violation of a Board order? (2) Whether the Board had the authority to sanction a violation of a consent agreement as a violation of a Board order? (3) Whether the Board's decision to revoke Dr. Hyde's license was supported by substantial evidence, and whether the Board's decision to revoke his license, given the evidence presented, was arbitrary and capricious?" *Id.*

In an unreported opinion, the Maryland Court of Special Appeals upheld the Board Decision. First, the court ruled that Dr. Hyde waived arguments regarding the Board's authority to revoke his license as a violation of the consent agreement. *Id.* at *5. The court determined that Dr. Hyde "did not present this argument before the Board" but instead "raised it for the first time on petition for judicial review." *Id.* Second, the court found that, under H.O. § 4-315 and the Code of Maryland Regulations, the Board "was authorized to revoke Dr. Hyde's license for violation of his consent agreement." *Id.* at *9; *see also id.* at *8. Third, the court ruled that more

than sufficient evidence supported the Board Decision to revoke Dr. Hyde's license, and the Board Decision was not arbitrary or capricious. *Id*. at *9.

On May 18, 2018, the Maryland Court of Appeals denied Dr. Hyde's petition for writ of certiorari. *See Hyde v. Md. State Bd. of Dental Exam'rs*, Petition Docket No. 27, Sept. Term 2018; ECF 64.

Additional facts are included in the Discussion.

## II.     Plaintiff's Contentions

Dr. Hyde alleges that on September 11, 2012, the Board, through its members, "charged [him] for violating a consent order that did not exist by falsely and intentionally misrepresenting the consent agreement dated [sic] as a consent order when he 'tested positive [f]or cocaine . . . .'" ECF 46, ¶ 11. Moreover, Dr. Hyde asserts that the Board and Dr. Chu knew that "no consent order existed." *Id*. ¶ 14. Further, he claims that the Board and Dr. Chu manufactured "material facts" and published a "false" consent order to revoke his dental license. *Id*. ¶ 14.[5] In addition, he contends that the Board, as well as its members and agents, "acted intentionally or maliciously and acted ultra vires" by revoking his license. *Id*. And, he maintains that the Board defamed him, vilified him, and humiliated him, *id*. ¶ 15, tantamount to a "'modern day lynching.'" *Id*. ¶ 16. Plaintiff also asserts that he "has lost all available means to support himself . . . ." *Id*.

In addition, Dr. Hyde claims that Friends "owed a duty of care to provide standard drug screens and to inform and to provide notice and accurate truthful information about the drug screen obtained or provided to him." *Id*. ¶ 11. He avers that Friends conducted "clandestine

---

[5] The Amended Complaint contains two paragraphs with the number "14." *See* ECF 46 at 5, 6.

tests," *id.* ¶ 2, and performed "false, unreliable and unconstitutional" drug testing. *Id.* ¶ 11. According to Hyde, the testing was "faulty and unreliable due to contamination or improper handling . . . ." *Id.*

Dr. Hyde asserts violations of his rights under the Fourth, Fifth, Eighth, and Fourteenth Amendments to the Constitution. ECF 46, ¶¶ 11, 18, 21. He also alleges a violation of Article 24 of the Maryland Declaration of Rights and Article III, § 40 of the Maryland Constitution. *Id.* ¶ 21. Further, he alleges that defendants engaged in a conspiracy, *id.* ¶ 25, and acted with malice. *Id.* ¶ 23.

### III.    Standards of Review

As noted, both defendants have moved to dismiss the Amended Complaint for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). ECF 61; ECF 63. And, Dr. Chu also seeks to dismiss plaintiff's claims for lack of subject matter jurisdiction, based on sovereign immunity. *See* ECF 63. Therefore, I shall also construe the Chu Motion as one under Fed. R. Civ. P. 12(b)(1).

### A.    Rule 12(b)(1)

A challenge to a federal court's subject matter jurisdiction is reviewed pursuant to Fed. R. Civ. P. 12(b)(1). Under Rule 12(b)(1), the plaintiff bears the burden of proving, by a preponderance of evidence, the existence of subject matter jurisdiction. *See Demetres v. East West Const., Inc.*, 776 F.3d 271, 272 (4th Cir. 2015); *see also Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999). A test of subject matter jurisdiction under Rule 12(b)(1) may proceed "in one of two ways": either a facial challenge, asserting that the allegations pleaded in the complaint are insufficient to establish subject matter jurisdiction, or a factual challenge, asserting "that the jurisdictional allegations of the complaint [are] not true." *Kerns v. United*

*States*, 585 F.3d 187, 192 (4th Cir. 2009) (quotation marks and citation omitted); *accord Durden v. United States*, 736 F.3d 296, 300 (4th Cir. 2013).

In a facial challenge, "the facts alleged in the complaint are taken as true, and the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction." *Kerns*, 585 F.3d at 192; *see also Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). In a factual challenge, on the other hand, "the district court is entitled to decide disputed issues of fact with respect to subject matter jurisdiction." *Kerns*, 585 F.3d at 192. In that circumstance, the court "may regard the pleadings as mere evidence on the issue and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Velasco v. Gov't of Indonesia*, 370 F.3d 392, 398 (4th Cir. 2004); *see also Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991).

With respect to Dr. Chu's contention that plaintiff's claims are barred by Eleventh Amendment immunity, Dr. Chu seems to raise a facial challenge. Therefore, I shall assume the truth of Dr. Hyde's allegations.

## B. Rule 12(b)(6)

A defendant may test the legal sufficiency of a complaint by way of a motion to dismiss under Rule 12(b)(6). *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165-66 (4th Cir. 2016); *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010), *aff'd sub nom. McBurney v. Young*, 569 U.S. 221 (2013); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted."

Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Fed. R. Civ. P. 8(a)(2). That rule provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of the rule is to provide the defendants with "fair notice" of the claims and the "grounds" for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

To survive a motion under Rule 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions' . . . ." (citation omitted)); *see also Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017). But, a plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2). *Twombly*, 550 U.S. at 555. Moreover, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.*, ___ U.S. ___, 135 S. Ct. 346, 346 (2014) (per curiam).

Nevertheless, the rule demands more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). If a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient. *Twombly*, 550 U.S. at 555. Rather, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotation marks omitted).

In reviewing a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint" and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted); *see Reyes v. Waples Mobile Home Park Ltd. P'ship*, ___ F.3d ____, 2018 WL 4344682, at *4 (4th Cir. Sept. 12, 2018); *Semenova v. Md. Transit Admin.*, 845 F.3d 564, 567 (4th Cir. 2017); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015); *Kendall v. Balcerzak*, 650 F.3d 515, 522 (4th Cir. 2011), *cert. denied*, 565 U.S. 943 (2011). But, a court is not required to accept legal conclusions drawn from the facts. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A Soc'y Without a Name v. Cmm'w of Va.*, 655 F.3d 342, 346 (4th. Cir. 2011), *cert. denied*, 566 U.S. 937 (2012).

Courts generally do not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses" through a Rule 12(b)(6) motion. *Edwards*, 178 F.3d at 243 (quotation marks and citation omitted). But, "in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)." *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (en banc); *accord Pressley v. Tupperware Long Term Disability Plan*, 533 F.3d 334, 336 (4th Cir. 2009); *see also U.S. ex rel. Oberg v. Penn. Higher Educ. Assistance Agency*, 745 F.3d 131, 148 (4th Cir. 2014). However, because Rule 12(b)(6) "is intended [only] to test the legal adequacy of the complaint," *Richmond, Fredericksburg & Potomac R.R. Co. v.*

*Forst*, 4 F.3d 244, 250 (4th Cir. 1993), "[t]his principle only applies . . . if all facts necessary to the affirmative defense 'clearly appear[ ] *on the face of the complaint*.'" *Goodman*, 494 F.3d at 464 (quoting *Forst*, 4 F.3d at 250) (emphasis added in *Goodman*).

"[A] court may properly take judicial notice of 'matters of public record' and other information that, under Federal Rule of Evidence 201, constitute 'adjudicative facts.'" *Goldfarb v. Mayor & City Council of Balt.*, 791 F.3d 500, 508 (4th Cir. 2015); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Katyle v. Penn Nat'l Gaming, Inc.,* 637 F.3d 462, 466 (4th Cir. 2011), *cert. denied*, 565 U.S. 825 (2011); *Philips v. Pitt Cty. Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). Pursuant to Fed. R. Evid. 201, a court may take judicial notice of adjudicative facts if they are "not subject to reasonable dispute," in that they are "(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." And, courts may take judicial notice of publicly available records, without converting a motion to dismiss to a motion for summary judgment. *See, e.g., Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 607 (4th Cir. 2015) ("Courts are permitted to consider facts and documents subject to judicial notice without converting the motion to dismiss into one for summary judgment."). A court may also take judicial notice of its own records. *Anderson v. Fed. Deposit Ins. Corp.*, 918 F.2d 1139, 1141 n.1 (4th Cir. 1990).

## C.    Rule 9(b)

To the extent that the Amended Complaint lodges a claim of fraud, Fed. R. Civ. P. 9(b) is pertinent. Rule 9(b) states: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."

As a preliminary matter, claims that sound in fraud, whether rooted in common law or arising under a statute, implicate the heightened pleading standard of Fed. R. Civ. P. 9(b).  *See, e.g.*, *E-Shops Corp. v. U.S. Bank N.A.*, 678 F.3d 659, 665 (8th Cir. 2012) ("Rule 9(b)'s heightened pleading requirement also applies to statutory fraud claims."); *see also Spaulding v. Wells Fargo Bank, N.A.*, 714 F.3d 769, 781 (4th Cir. 2013) (stating that an MCPA claim that "sounds in fraud[] is subject to the heightened pleading standards of Federal Rule of Civil Procedure 9(b)").

Under the rule, a plaintiff alleging a claim that sounds in fraud "'must, at a minimum, describe the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.'" *United States ex rel. Owens v. First Kuwaiti Gen'l Trading & Contracting Co.,* 612 F.3d 724, 731 (4th Cir. 2010) (citation omitted).  In other words, "'Rule 9(b) requires plaintiffs to plead the who, what, when, where, and how: the first paragraph of any newspaper story.'"  *Crest Construction II, Inc. v. Doe,* 660 F.3d 346, 353 (8th Cir. 2011) (citation omitted).

Rule 9(b) serves several salutary purposes:

> First, the rule ensures that the defendant has sufficient information to formulate a defense by putting it on notice of the conduct complained of . . . . Second, Rule 9(b) exists to protect defendants from frivolous suits.  A third reason for the rule is to eliminate fraud actions in which all the facts are learned after discovery.  Finally, Rule 9(b) protects defendants from harm to their goodwill and reputation.

*Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999) (citation omitted).

Notably, however, Rule 9(b) by its plain text permits general averment of aspects of fraud that relate to a defendant's state of mind.  And, a "court should hesitate to dismiss a complaint under Rule 9(b) if the court is satisfied (1) that the defendant has been made aware of the

particular circumstances for which she will have to prepare a defense at trial, and (2) that plaintiff has substantial prediscovery evidence of those facts." *Id.* Moreover, Rule 9(b) is "less strictly applied with respect to claims of fraud by concealment" or omission of material facts, as opposed to affirmative misrepresentations, because "an omission 'cannot be described in terms of the time, place, and contents of the misrepresentation or the identity of the person making the misrepresentation.'" *Shaw v. Brown & Williamson Tobacco Corp.*, 973 F. Supp. 539, 552 (D. Md. 1997) (quoting *Flynn v. Everything Yogurt*, HAR-92-3421, 1993 WL 454355, at *9 (D. Md. Sept. 14, 1993)).

## IV.    Discussion

As noted, both Friends and Dr. Chu have moved to dismiss plaintiff's § 1983 claims under Rule 12(b)(6) on the basis that the Amended Complaint, on its face, is time-barred. Dr. Chu also asserts several other grounds to support dismissal. And, he has moved to dismiss plaintiffs' claims under Rule 12(b)(1) for lack of subject matter jurisdiction under the Eleventh Amendment.

Pursuant to 42 U.S.C. § 1983, a plaintiff may file suit against any person who, acting under color of state law, "subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. *See, e.g., Filarsky v. Deila*, 566 U.S. 377, 383 (2012); *see also Owens v. Balt. City State's Attorney's Office*, 767 F.3d 379 (4th Cir. 2014), *cert. denied sub nom. Balt. City Police Dep't v. Owens*, 135 S. Ct. 1983 (2015). However, § 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver,* 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan,* 443 U.S. 137, 144 n. 3 (1979)). In other words, § 1983

allows "a party who has been deprived of a federal right under the color of state law to seek relief." *City of Monterey v. Del Monte Dunes at Monterey, Ltd*., 526 U.S. 687, 707 (1999).

To state a claim under § 1983, a plaintiff must allege (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a "person acting under the color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988); *see Crosby v. City of Gastonia*, 635 F.3d 634, 639 (4th Cir. 2011), *cert*. *denied*, 565 U.S. 823 (2011); *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 615 (4th Cir. 2009); *Jenkins v. Medford*, 119 F.3d 1156, 1159-60 (4th Cir. 1997).

The phrase "under color of state law" is an element that "is synonymous with the more familiar state-action requirement—and the analysis for each is identical." *Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (citing *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 929 (1982)). A person acts under color of state law "only when exercising power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *Polk Cty. v. Dodson*, 454 U.S. 312, 317-18 (1981) (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941)). In *Philips*, 572 F.3d at 181, the Court said: "[P]rivate activity will generally not be deemed state action unless the state has so dominated such activity as to convert it to state action: Mere approval of or acquiescence in the initiatives of a private party is insufficient." (Citations and internal quotation marks omitted).

### A.    Friends Motion

The Amended Complaint contains a total of eight counts, of which three are expressly directed at Friends. ECF 46 at 12-13. But, "out of an abundance of caution," Friends has moved to dismiss seven counts, asserting all are barred by the Maryland statute of limitations, Md. Code

(2013 Repl. Vol., 2017 Supp.), § 5-101 of the Courts and Judicial Proceedings Article ("C.J."). ECF 61-1 at 4.[6]

The bar of limitations is an affirmative defense, and is ordinarily not considered in the context of a motion to dismiss. However, "[w]hen it appears on the face of the complaint that the limitation period has run, a defendant may properly assert a limitations defense through a Rule 12(b)(6) motion to dismiss." *See Miller v. Pac. Shore Funding*, 224 F. Supp. 2d 977, 985 (D. Md. 2002), *aff'd*, 92 F. App'x 933 (4th Cir. 2004); *see also Dean v. Pilgrim's Pride Corp.*, 395 F.3d 471, 474 (4th Cir. 2005) ("The raising of the statute of limitations as a bar to plaintiffs' cause of action constitutes an affirmative defense and may be raised by motion pursuant to Fed. R. Civ. P. 12(b)(6), if the time bar is apparent on the face of the complaint.").

Under Maryland law, "[a] civil action shall be filed within three years from the date it accrues unless another provision of the Code provides" otherwise. C.J. § 5-101. "[T]he question of accrual in § 5-101 is left to judicial determination, unless the determination rests on the resolution of disputed facts regarding discovery of the wrong." *Poole v. Coakley & Williams Const., Inc.*, 423 Md. 91, 131, 31 A.3d 212, 236 (2011) (internal quotation marks omitted); *see Bank of New York v. Sheff*, 382 Md. 235, 244. 854 A.2d 1269, 1275 (2004) (stating that summary judgment may be appropriate if there is no dispute of material fact as to whether plaintiff was on inquiry notice more than three years before suit was file); *Frederick Road Ltd. P'ship v. Brown & Sturm*, 360 Md. 76, 95, 756 A.2d 963, 973 (2000) (explaining that the determination of accrual "may be based solely on law, solely on fact, or on a combination of law and fact, and is reached after careful consideration of the purpose of the statute and the facts to which it is applied").

---

[6] The request for injunctive relief in Count Eight clearly does not pertain to Friends.

The Amended Complaint asserts, pursuant to 42 U.S.C. § 1983, a violation of Dr. Hyde's constitutional rights under the Fourth, Fifth, Eighth, and Fourteenth Amendments, including an unlawful taking of a vested property right, without just compensation, in violation of the Fifth Amendment. *See*, *e.g.*, ECF 46, ¶¶ 18-20. "There is no federal statute of limitations for § 1983 claims, so the state limitations period which governs personal injury actions is applied . . . ." *Lewis v. Richmond City Police Dep't*, 947 F.2d 733, 735 (4th Cir. 1991); *see also Wilkins v. Montgomery*, 751 F.3d 214, 223 (4th Cir. 2014). Maryland has a three-year statute of limitations for personal injury claims. *Owens v. Balt. City State's Attorney's Office*, 767 F.3d 379, 388 (4th Cir. 2014), *cert. denied sub nom.*, *Balt. City Police Dep't v. Owens*, 135 S. Ct. 1983 (2015); *see* C.J. § 5-101.

According to Friends, plaintiff's federal and state claims are subject to a three-year limitations period. Moreover, Friends contends that the Amended Complaint, which first named Friends as a defendant, was filed after the expiration of the three-year limitations period. Friends asserts: "On the face of the First Amended Complaint, Dr. Hyde suffered his injury, the loss of his license to practice dentistry, on July 2, 2013." ECF 61-1 at 5.

Friends acknowledges that the Amended Complaint does not reflect when Dr. Hyde received notice of the revocation of his license. *Id.* Therefore, it adopts the accrual date of August 1, 2013, when Dr. Hyde filed suit against the Board in State court, seeking judicial review as to the revocation of his dental license. *Id.* at 8. *See Hyde*, No. 379753-V, Docket No. 1. Friends argues that, "as of August 1, 2013, Dr. Hyde demonstrated . . . that he thought he had been wronged by the Board's Order." ECF 61-1 at 8. Nevertheless, Dr. Hyde did not file the Amended Complaint, naming Friends as a party to the suit, until August 28, 2017—more than four years after August 1, 2013. *Id.*

In response, Dr. Hyde argues, pursuant to C.J. § 5-203, or the so-called discovery rule, that the accrual date was tolled as a result of Friends' fraudulent acts. *See* ECF 70 at 2-4. He contends that Friends' "fraudulent conduct . . . is sufficient to toll the applicable statute of limitations," and therefore the Court should deny the Friends Motion. *Id.* at 4.

C.J. § 5-203 states: "If the knowledge of a cause of action is kept from a party by the fraud of an adverse party, the cause of action shall be deemed to accrue at the time when the party discovered, or by the exercise of ordinary diligence should have discovered the fraud."

An action typically accrues at the time of the wrong, unless a judicial or legislative exception provides otherwise. *Poole*, 423 Md. at 131, 31 A.3d at 236. But, "[r]ecognizing the unfairness inherent in charging a plaintiff with slumbering on his rights where it was not reasonably possible to have obtained notice of the nature and cause of an injury," Maryland has adopted the discovery rule to determine the date of accrual. *See Sheff*, 382 Md. at 244, 854 A.2d at 1275; *Frederick Road*, 360 Md. at 95, 756 A.2d at 973; *see also* C.J. § 5-203. Notice may be actual or constructive. *Poffenberger v. Risser*, 290 Md. 631, 636-38, 431 A.2d 677, 680-81 (1981).

"The discovery rule acts to balance principles of fairness and judicial economy in those situations in which a diligent plaintiff may be unaware of an injury or harm during the statutory period." *Dual Inc. v. Lockheed Martin Corp.*, 383 Md. 151, 167, 857 A.2d 1095, 1104 (2004). Under the discovery rule, "a plaintiff's cause of action accrues when the plaintiff knows or reasonably should have known of the wrong." *Brown v. Neuberger, Quinn, Gielen, Rubin & Gibber, P.A.*, 731 F. Supp. 2d 443, 449 (D. Md. 2010) (citing *Lumsden v. Design Tech Builders, Inc.,* 358 Md. 435, 749 A.2d 796, 801 (2000)), *aff'd*, 495 F. App'x 350 (4th Cir. 2012). Nevertheless, "[t]his standard . . . does not require actual knowledge on the part of the plaintiff,

but may be satisfied if the plaintiff is on 'inquiry notice.'" *Id*. at 167-68, 857 A.2d at 1104

(citing *Am. Gen. Assurance Co. v. Pappano,* 374 Md. 339, 351, 822 A.2d 1212, 1219 (2003); *see*

*Doe v. Archdiocese of Washington,* 114 Md. App. 169, 188-89, 689 A.2d 634, 644 (1997)). A

plaintiff is on inquiry notice when the plaintiff "possesses 'facts sufficient to cause a reasonable

person to investigate further, and . . . a diligent investigation would have revealed that the

plaintiffs were victims of . . . the alleged tort.'" *Dual Inc.*, 383 Md. at 168, 857 A.2d 1095

(quoting *Pennwalt Corp. v. Nasios*, 314 Md. 433, 448-49, 550 A.2d 1155, 1159 (1988))

(alterations in original).

"Section 5-203 does not require that the defendant commit a fraud distinct from that

initially committed for the purpose of keeping the plaintiff in ignorance of his or her cause of

action." *Frederick Road*, 360 Md. at 98, 756 A.2d at 975. Rather, C.J. § 5-203 applies where

two conditions are met: "(1) the plaintiff has been kept in ignorance of the cause of action by the

fraud of the adverse party, and (2) the plaintiff has exercised usual or ordinary diligence for the

discovery and protection of his or her rights." *Id*. at 98-99, 756 A.2d at 975. "'The fraud

exception is essentially a tangent of the discovery rule.'" *Larocca v. Creig Northrop Team, P.C.*,

217 Md. App. 536, 555, 94 A.3d 197, 208 (2014) (quoting *Supik v. Bodie, Nagle, Dolina, Smith*

*& Hobbs, P.A*, 152 Md. App. 698, 715, 834 A.2d 170, 179 (2003)).

In this case, Dr. Hyde contends that he "has alleged precisely such fraudulent conduct on

the part of Defendant Friends" to satisfy C.J. § 5-203. ECF 70 at 3. Specifically, the Amended

Complaint asserts that "the services provided by FRIENDS were misleading, false, and deceptive

trade practices." ECF 46, ¶ 9. Dr. Hyde further alleges that Friends "clandestinely manufactured

evidence or reused the negative result in such a manner to obtain a positive result using a non

standard test (derived from the negative result that should have cleared Dr. Hyde on its own) from FRIENDS without his knowledge or consent  . . . ." *Id*. ¶ 22.

Notably, on August 1, 2013, Dr. Hyde challenged the loss of his license in State court. ECF 61-1 at 8. The revocation was based on the results of drug testing conducted by Friends. As Friends argues, by that date Dr. Hyde "knew of his injury, the loss of his license, and that the Board relied on Friends' test reports, when he received the Board's Order revoking his license. He was then on inquiry notice." ECF 72 at 5. Yet, Friends was sued for the first time when the Amended Complaint was filed on August 28, 2017. That is more than four years after August 1, 2013, when Dr. Hyde filed suit in State court.

According to Dr. Hyde, the date of accrual is "well after" July 2, 2013, when the Board issued its Decision and revoked his license. ECF 70 at 2. He asserts: "What is known is that Dr. Hyde was informed and put on notice that the testing was manufactured, illegal and unreliable in January 2015." *Id*. at 4. Dr. Hyde provides no basis for this date. *Id*. He argues only that "discovery is necessary to find out when and who was involved in the manufacturing of testing evidence that would be flushed out in discovery." *Id*.

Dr. Hyde's allegations do not satisfy the heightened pleading standard of Rule 9(b). Nor does he satisfy C.J. § 5-203. The Amended Complaint asserts that Friends fraudulently changed the results of Dr. Hyde's drug test, but fails to specify how the conduct prevented plaintiff from discovering the fraud within the limitations period. Moreover, plaintiff fails to demonstrate that Friends took any affirmative action to conceal the cause of action. For these reasons, plaintiff's allegations are insufficient to "constitute the kind of fraud necessary [under § 5-203] to toll the statute of limitations." *Douglass v. NTI-TSS, Inc.*, 632 F. Supp. 2d 486, 492 (D. Md. 2009).

Therefore, as to plaintiff's claims against Friends, the suit was untimely filed; the claims are barred.

## B.    Chu Motion

As an initial matter, plaintiff fails to identify the capacity in which he seeks to hold Dr. Chu liable.  *See* ECF 46, ¶ 8 ("Defendant CHU was acting under color of law, as the president of the BOARD for the acts complained herein for purposes of 42 USC [§] 1983 and also acted outside the scope of his authority and not in good faith as alleged herein giving rise to independent liability.").  The Fourth Circuit has said that "when a plaintiff does not allege capacity specifically, the court must examine the nature of the plaintiff's claims, the relief sought, and the course of proceedings to determine whether a state official is being sued in a personal capacity."  *Biggs v. Meadows*, 66 F.3d 56, 61 (4th Cir. 1995).

Factors indicating that the suit has been filed against a state official in his personal capacity, rather than official capacity, include: (1) "the plaintiff's failure to allege that the defendant acted in accordance with governmental policy or custom, or lack of indicia of such policy or custom on face of the complaint;" (2) "plaintiff's request for compensatory or punitive damages, since such relief is unavailable in official capacity suits;" and (3) "[t]he nature of any defenses raised in response to the complaint."  *Id.*

I shall construe the Amended Complaint as one brought against Dr. Chu in his official and individual capacities.

Dr. Chu has moved to dismiss the Amended Complaint on several grounds.  First, he argues that the statute of limitations bars all counts against him.  ECF 63-1 at 3-5.  In the alternative, Dr. Chu contends that the doctrines of Eleventh Amendment immunity, collateral estoppel, and absolute immunity warrant dismissal of all claims as to him.  *Id.* at 5-10.

### 1.    Statute of Limitations

Dr. Chu maintains that "the same timeline, dates, and law apply both to Friends and to Dr. Chu with respect to the statute of limitation." ECF 63-1 at 3. Dr. Hyde does not dispute that, for the purposes of determining the limitations period as to his claims against Dr. Chu, the applicable accrual date is July 2, 2013, when the Board issued its Decision. ECF 69 at 8. But, plaintiff contends that the "continuing harm" doctrine tolled the limitations period. *Id.*

"The continuing harm or continuing violation doctrine tolls the statute of limitations in cases where there are continuing violations." *Litz v. Md. Dept. of Env't*, 434 Md. 623, 646, 76 A.3d 1076, 1089 (2013) (quotation marks, ellipsis, and citation omitted). Under the continuing harm doctrine, "each new repetition of the wrong creates further liability . . . and a new statute of limitations begins to run after each wrong perpetuated." *SPS Ltd. P'ship, LLLP, et al. v. Sparrows Point, LLC, et al.*, 122 F. Supp. 3d 239, 245 (D. Md. 2015) (citing *Litz*, 434 Md. at 646, 76 A.3d at 1089) (quotation marks omitted). In particular, plaintiff asserts that the Maryland Court of Special Appeals' recent decision "constitutes a continuing harm." *Id.* (citing *Hyde*, No. 2618, Sept. Term 2014, 2018 WL 526662) (quotation marks omitted).

Dr. Hyde argues that Dr. Chu "'acted outside the scope of his authority' . . . in revoking Plaintiff's dental license." ECF 69 at 8 (citing ECF 46, ¶ 8). And, plaintiff insists that Dr. Chu "has continued to exceed his statutory authority in asmuch [sic] as, at every stage, the Board has defended the July 2, 2013 decision as challenged by Plaintiff in subsequent litigation." ECF 69 at 8. Specifically, Dr. Hyde claims that Dr. Chu's defense of the Board Decision, culminating in the Maryland Court of Special Appeal's decision, "constitutes a continuing harm to plaintiff, and therefore tolls the applicable statutes of limitations for Plaintiff's claim." *Id.*

In my view, the continuing harm doctrine is not applicable here. Dr. Hyde's complaints stem from the Board Decision to revoke his dental license, as well as Dr. Chu's role in crafting and implementing the decision, given his position as President of the Board. Dr. Hyde focuses on the consequences of the Board Decision. But, the "continuing tort doctrine requires that a tortious act-not simply the continuing ill effects of prior tortious acts—fall within the limitation period." *MacBride v. Pishvaian*, 402 Md. 572, 585, 937 A.2d 233, 240 (2007) (quotation marks and citation omitted)), *abrogated on other grounds by Litz*, 434 Md. 623, 76 A.3d 1076. Hyde's allegations do not constitute a "'series of acts or course of conduct . . . that would delay the accrual of a cause of action to a later date.'" *Id.* (ellipsis in original) (citation omitted). As such, limitations is not tolled or extended under the continuing harm theory.

It follows that the three-year limitations period that began on the date of accrual expired by the time plaintiff filed the Amended Complaint against Dr. Chu on August 28, 2017. Accordingly, dismissal of the claims brought against Dr. Chu is warranted.

## 2. Eleventh Amendment

Alternatively, even if the statute of limitations had not expired by the time suit was filed against Dr. Chu, he argues that the Eleventh Amendment to the Constitution warrants dismissal of all claims against him in his official capacity. In support of this argument, the Chu Motion proffers the same "reasons previously stated by the Board in its prior motion to dismiss." *See* ECF 47-1 at 4.

In my Memorandum Opinion of July 7, 2017 (ECF 42), and in my Memorandum of April 11, 2018 (ECF 52), I dismissed plaintiff's claims against the Board on the ground that the suit was barred by the Eleventh Amendment. The Eleventh Amendment provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity,

commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or subjects of any Foreign State." Thus, states, state agencies, and state officials sued in their official capacities generally enjoy immunity from suits brought in federal court by their own citizens. *See Hans v. La.*, 134 U.S. 1, 3 (1890); *see also Bd. of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001) ("The ultimate guarantee of the Eleventh Amendment is that nonconsenting states may not be sued by private individuals in federal court."). However, the "Eleventh Amendment does not shield state actors from liability for constitutional torts that they commit in their individual capacities." *Dyer v. Md. State Bd. of Educ.*, 187 F. Supp. 3d 599, 611 (D. Md. 2016), *aff'd*, 685 F. App'x 261 (4th Cir. 2017).

Congress has not abrogated Eleventh Amendment immunity through § 1983. Indeed, § 1983 claims are not cognizable against states, state agencies, or state agents acting in their official capacities. *See Lee-Thomas v. Bd. of Educ.*, CBD-08-3327, 2010 WL 2365673, at *3 (D. Md. June 8, 2010) ("A state simply cannot be sued as a 'person' in a 1983 action.") (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 64 (1989)), *aff'd sub nom. Lee-Thomas v. Prince George's Cty. Pub. Sch.*, 666 F.3d 244 (4th Cir. 2012); *Hanifee v. Bd. of Educ.*, RDB-09-2381, 2010 WL 723772, at *5 (D. Md. Feb. 24, 2010) ("§ 1983 . . . cannot be expanded by the states, and furthermore has never been amended by Congress to make it applicable to damages claims against the states or their agencies.").

The Court of Appeals for the Fourth Circuit has noted three exceptions to the Eleventh Amendment's prohibition of suits against a state, an arm of the state, or an official sued in his official capacity. They are (1) explicit congressional abrogation of the Eleventh Amendment; (2) prospective injunctive relief against a state official in his or her official capacity; and (3)

voluntary waiver.  *Lee-Thomas v. Prince George's Cnty. Pub. Sch.*, 666 F.3d 244, 249 (4th Cir. 2012).

The Maryland General Assembly has waived sovereign immunity with respect to certain kinds of tort claims in State court.  But, it has expressly declined to extend that waiver to such claims in federal court. *See* Md. Code, State Gov't § 12-103(2) (stating that the Maryland Tort Claims Act does not "waive any right or defense of the State or its units, officials, or employees in an action in a court of the United States . . . including any defense that is available under the 11th Amendment to the United States Constitution"); *see also Dorsey v. Dep't of Pub. Safety & Corr. Servs.*, TDC-14-2568, 2016 WL 1239922, at *5 (D. Md. Mar. 24, 2016) ("Maryland has explicitly denied waiver of Eleventh Amendment immunity.").

The second exception involves the doctrine of *Ex parte Young*, 209 U.S. 123, 159-60 (1908).  *Ex parte Young* provides an exception to the general law, permitting prospective injunctive relief to correct an ongoing violation if the suit is brought against state officials in their official capacities.  *Id.*  To determine if the exception applies, "a court need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Manion v. N.C. Med. Bd.*, 693 F. App'x 178, 180-81 (4th Cir. 2017) (citation omitted).

Relying on *Manion*, plaintiff asserts that the *Ex parte Young* doctrine is applicable here, as he seeks prospective injunctive relief.  ECF 69 at 3-4.  In particular, in the Amended Complaint plaintiff "demands that this court enjoin" Dr. Chu "from defending or prosecuting any action alleging a consent order exists with the Plaintiff or to continue violating the rights of Plaintiff or otherwise acting against his property and private interests by representing there is a consent order to charge and revoke Plaintiff's license . . . ."  ECF 46, ¶ 55.

In response, Dr. Chu asserts that "the injunction requested by Dr. Hyde is a legal impossibility" because "[t]he Court of Special Appeals affirmed the Board's Order revoking Hyde's license." ECF 71 at 2. He points out: "Dr. Hyde offers no explanation as to how Eleventh Amendment immunity would apply where – as is the case here – a Board's Order was sustained and then affirmed by the state courts." *Id.*

In *Manion*, the Fourth Circuit considered several causes of actions filed by Manion against various defendants, including the North Carolina Medical Board, in addition to organizations and individuals affiliated with the board. 693 F. App'x at 179. Manion alleged that the defendants "continued to violate his constitutional rights by refusing to consider his application for reinstatement of his medical license" unless he met an evaluation requirement. *Id.* at 181. Manion sought an injunction "ordering the Medical Board to dispense with that prerequisite." *Id.* The Fourth Circuit ruled that "this [wa]s prospective injunctive relief that [fell] under the *Ex parte Young* exception, and, therefore, that the Eleventh Amendment [did] not bar Manion's claim for such relief." *Id.*

The Amended Complaint asks this Court to enjoin Dr. Chu from claiming that "a consent order exists" or "representing there is a consent order to charge and revoke Plaintiff's license in violation of Maryland law . . . ." ECF 46, ¶ 55. As noted, Dr. Hyde complains that the parties had a consent agreement, not a consent order. *Id.* ¶ 11.

It appears that the parties and the courts have interchangeably referred to the consent agreement as a consent order. In the "Background" section of its opinion, the Maryland Court of Special Appeals specifically stated that on November 30, 1999, "Dr. Hyde entered into a consent order with the Maryland State Board of Dental Examiners . . . ." *Hyde*, 2018 WL 526662, at * 5. In the context of this case, it is of no moment as to whether the underlying drug testing

obligation arises from a consent agreement or a consent order. It is a distinction without a difference.

### 3. Collateral Estoppel

Dr. Chu asserts, pursuant to Rule 12(b)(6), that plaintiff's claims are barred by collateral estoppel, an affirmative defense. *See* ECF 63-1 at 9-10. He argues that the decision of the Maryland Court of Special Appeal, upholding the Board Decision, "should be granted preclusive effect under collateral estoppel." *Id*. at 9.[7]

As discussed, *supra*, a "motion to dismiss filed under Federal Rule of Procedure 12(b)(6), which tests the sufficiency of the complaint, generally cannot reach the merits of an affirmative defense." *Goodman*, 494 F.3d at 464 (4th Cir. 2007). But, an affirmative defense can be resolved by way of a Rule 12(b)(6) motion "in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint." *Id.* "This principle only applies, however, if all facts necessary to the affirmative defense '*clearly appear*[ ] *on the*

---

[7] "[A] court may properly take judicial notice of 'matters of public record' and other information that, under Fed. R. Evid. 201, constitute 'adjudicative facts.'" *Goldfarb*, 791 F.3d at 508; *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Katyle v. Penn Nat'l Gaming, Inc.*, 637 F.3d 462, 466 (4th Cir. 2011), *cert. denied*, 565 U.S. 825 (2011); *Philips*, 572 F.3d at 180. However, judicial notice of adjudicative facts is appropriate only if they are "not subject to reasonable dispute," in that they are "(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201.

Moreover, it is well settled that a district court may "properly take judicial notice of its own records." *Anderson v. Fed. Deposit Ins. Corp.*, 918 F.2d 1139, 1141 n.1 (4th Cir. 1990); Fed. R. Evid. 201. Courts may also take judicial notice of publicly available records without converting a motion to dismiss to a motion for summary judgment. *See, e.g.*, *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 607 (4th Cir. 2015) ("[C]ourts are permitted to consider facts and documents subject to judicial notice without converting the motion to dismiss into one for summary judgment.").

*face of the complaint*,'" or in other documents that are proper subjects of consideration under Rule 12(b)(6). *Id.* (quoting *Forst*, 4 F.3d at 250 (4th Cir. 1993)) (emphasis in *Goodman*).

Under principles of collateral estoppel, "once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." *Allen v. McCurry*, 449 U.S. 90, 94 (1980). In other words, collateral estoppel "bars the relitigation of specific issues that were actually determined in a prior action," *Sartin v. Macik*, 535 F.3d 284, 287 (4th Cir. 2008), so long as the "'party against whom [collateral estoppel] is asserted had a full and fair opportunity to litigate'" the issue. *In re Microsoft Corp. Antitrust Litig.*, 355 F.3d 322, 326 (4th Cir. 2004).

The applicable law for purposes of preclusion in federal court is the law of the tribunal in which the prior judgment was entered. *See Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984); *Laurel Sand & Gravel, Inc. v. Wilson*, 519 F.3d 156, 161 (4th Cir. 2008). Preclusion principles can apply, in some circumstances, to state administrative determinations as well as state judicial determinations. The Supreme Court has held, in the § 1983 context, that "when a state agency 'acting in a judicial capacity . . . resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate,' federal courts must give the agency's factfinding the same preclusive effect to which it would be entitled in the State's courts." *Univ. of Tenn. v. Elliott*, 478 U.S. 788, 799 (1986).

Under Maryland law, collateral estoppel is a "'common law doctrine'" by which, "'[w]hen an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim.'" *Cosby v.*

*Dept. of Human Res.*, 425 Md. 629, 639, 42 A.3d 596, 602 (2012). Collateral estoppel requires satisfaction of four conditions:

> "1. Was the issue decided in the prior adjudication identical with the one presented in the action in question?
>
> 2. Was there a final judgment on the merits?
>
> 3. Was the party against whom [collateral estoppel] is asserted a party or in privity with a party to the prior adjudication?
>
> 4. Was the party against whom [collateral estoppel] is asserted given a fair opportunity to be heard on the issue?"

*Colandrea v. Wilde Lake Cmty. Ass'n, Inc.*, 361 Md. 371, 391, 761 A.2d 899, 909 (2000) (citation omitted).

The Maryland Court of Appeals has said that it "is unclear under Maryland law to what extent . . . collateral estoppel appl[ies] to administrative decisions." *Sugarloaf Citizens Ass'n v. Northeast Md. Waste Disposal Auth.*, 323 Md. 641, 658 n.13, 594 A.2d 1115, 1123 n.13 (1991). However, the Maryland courts have articulated three minimum attributes that an administrative adjudication must possess in order to have the potential to be given collateral estoppel effect: (1) that "the agency was acting in a quasi-judicial capacity"; (2) that the issue as to which the defendant seeks to estop the plaintiff "was actually litigated before the agency"; and (3) that "resolution of the issue was necessary to the agency's decision." *Neifert v. Dept. of the Envir.*, 395 Md. 486, 507, 910 A.2d 1100, 1112 (2006); *accord Batson v. Shiflett*, 325 Md. 684, 701-05, 601 A.2d 1191, 1200-02 (1992). "Thus, agency findings made in the court of proceedings that are judicial in nature should be given the same preclusive effect as findings made by a court." *Batson*, 325 Md. at 702, 602 A.2d at 1200. As discussed in regard to Dr. Chu's immunity

defense, *infra*, the Board's evidentiary hearing on January 2, 2013, was "judicial in nature," *id.*, and Dr. Chu, as president of the Board, acted in a quasi-judicial capacity.

Regardless of whether an administrative determination is entitled to collateral estoppel effect, "it is crystal clear that a final judgment of a [state] court affirming [or reversing] a decision of an administrative agency . . . is entitled to full preclusive effect." *Esslinger v. Baltimore City*, 95 Md. App. 607, 621, 622 A.2d 774, 781 (1993) (citing cases). Encapsulating the familiar standard of judicial review of an agency proceeding, the Maryland Court of Appeals has explained that a reviewing court's "'role is limited to ascertaining *whether there exists substantial evidence in the record as a whole that supports the findings and conclusions of the agency*; we must also determine 'if the administrative decision is premised upon an erroneous conclusion of law.'" *Sec'y of DPSCS v. Demby*, 390 Md. 580, 614, 890 A.2d 310, 330 (2006) (emphasis added). When "determining whether a constitutional right has been infringed, [a reviewing court must] make an independent constitutional appraisal." *Watkins v. Sec'y of DPSCS*, 377 Md. 34, 46, 831 A.2d 1079, 1086 (2003).

An agency's factual determinations are reviewed under a "substantial evidence" standard. "In applying the substantial evidence test, a reviewing court decides whether a reasoning mind reasonably could have reached the factual conclusion the agency reached." *Md. Aviation Admin. v. Noland*, 386 Md. 556, 571, 873 A.2d 1145, 1154 (2005) (internal citations and quotation marks omitted). Indeed, on review of the Board Decision, the Maryland Court of Special Appeals made clear that it was "limited to determining if there is substantial evidence in the record to support the agency's findings and conclusions, and to determine if the administrative decision is premised upon an erroneous conclusion of law." *Hyde*, 2018 WL 526662, at *5.

Dr. Hyde argues that the collateral estoppel doctrine is inapplicable in this case for two reasons. First, relying on *In re Neil C.*, 308 Md. 591, 596, 521 A.2d 329, 331 (1987), plaintiff argues that "collateral estoppel does not apply where there is a 'lower burden of proof in the subsequent civil proceeding' than operative in the prior proceeding." ECF 69 at 6.

But, this argument mischaracterizes the holding in *In re Neil C*. In that case, the Maryland Court of Appeals addressed the question of whether a defendant's acquittal in a *criminal* case of child abuse and sex offense charges required dismissal of a Child In Need Of Assistance ("CINA") petition based on the same conduct. *In re Neil C.*, 308 Md. at 593, 521 A.2d at 330. The court determined that the collateral estoppel doctrine did not preclude the subsequent CINA proceeding, because the CINA petition involved a lesser burden of proof than that involved in the prior *criminal* proceeding. *Id*. at 331, 521 A.2d at 596. Here, Dr. Hyde asserts that he "faces a much lower burden of proof for his claims in this case, when compared with the higher 'substantial evidence' standard applied in review of the Board proceeding by the Maryland Court." ECF 69 at 7 (citing *Hyde*, 2018 WL 526662, at *5).

*In re Neil C.* is inapplicable here. The Maryland Court of Special Appeals did not conduct or review a criminal proceeding. Further, as noted, Maryland courts have made clear that a state court's final judgment affirming an administrative agency's decision, as is the case here, is given "full preclusive effect." *Esslinger*, 95 Md. App. at 621, 622 A.2d at 781 (citing cases).

Second, Dr. Hyde contends that "collateral estoppel does not apply here because the 'issue' in this case is not 'identical' to that in the board proceeding . . . ." ECF 69 at 6. In addition, plaintiff asserts that Dr. Chu "does not point to a specific 'issue' that may be estopped but merely makes generalized argument for collateral estoppel." *Id*. at 7.

In response, Dr. Chu states that the Maryland Court of Special Appeals' decision affirmed the Board Decision "by finding that the Board was factually and legally correct to revoke Dr. Hyde's license." ECF 71 at 2. Because that decision was "final," Dr. Chu asserts, plaintiff is precluded from "relitigating the exact issues raised in his administrative appeal." *Id*.

As noted, the first criterion for application of the doctrine of collateral estoppel is that the "issue decided in the prior adjudication" must be "identical with the one presented in the action in question." *Colandrea*, *supra*, 361 Md. at 391, 761 A.2d at 909.

On review of the Board Decision, the Maryland Court of Special Appeals addressed the following questions: "(1) Whether Dr. Hyde waived arguments regarding the Board's authority to sanction a violation of a consent agreement as a violation of a Board order? (2) Whether the Board had the authority to sanction a violation of a consent agreement as a violation of a Board order? (3) Whether the Board's decision to revoke Dr. Hyde's license was supported by substantial evidence, and whether the Board's decision to revoke his license, given the evidence presented, was arbitrary and capricious?" *Hyde*, 2018 WL 526662, at *1.

As to the second appellate question, Dr. Hyde acknowledged that if he failed to comply with any of the conditions of his consent agreement, "he could be subject to revocation of his license" by the Board. *Id*. at *8. However, Dr. Hyde asserted that, "by definition, a consent agreement is not a Board order, and therefore, the Board did not have the statutory authority to sanction Dr. Hyde . . . ." *Id*. The Maryland Court of Special Appeals rejected this contention and found that, pursuant to H.O. § 4-315 and the Code of Maryland Regulations, "the Board was authorized to revoke Dr. Hyde's license for violation of his consent agreement." *Id*. at *9. The court reasoned that he was "'ordered' by the Board to comply" with the conditions of his consent

agreement and, therefore, the "Board, in sanctioning Dr. Hyde, was fully authorized to hold him accountable to his agreement." *Id*. at *8.

Dr. Hyde's claim for injunctive relief is predicated on the same issue resolved by the Maryland Court of Special Appeals: whether the Board was authorized to revoke his license for violation of his consent agreement. As discussed, Dr. Hyde asks this Court to enjoin Dr. Chu from arguing that "a consent order exists" or "representing there is a consent order to charge and revoke Plaintiff's license in violation of Maryland law . . . ." ECF 46, ¶ 55. But, the Maryland Court of Special Appeals has already determined that Dr. Hyde was "ordered" by the Board to adhere to the consent agreement, and that once Dr. Hyde was found in violation of the agreement, the Board had the authority to revoke his license.

Accordingly, the first criterion of collateral estoppel is satisfied. Furthermore, Dr. Hyde does not contest the remaining three criteria: ". . . 2. Was there a final judgment on the merits? 3. Was the party against whom [collateral estoppel] is asserted a party or in privity with a party to the prior adjudication? 4. Was the party against whom [collateral estoppel] is asserted given a fair opportunity to be heard on the issue?" *Colandrea*, 361 Md. at 391, 761 A.2d at 909 (citation omitted). Therefore, all four criteria are met here.

As such, the doctrine of collateral estoppel bars relitigation as to the Board's authority to sanction Dr. Hyde in revoking his license.

### 4. Immunity

Dr. Chu contends that his duties as President of the Board are quasi-judicial and therefore immune from § 1983 liability. *See* ECF 631-1 at 7-9. As noted, *supra*, a motion to dismiss pursuant to Rule 12(b)(6) "invites an inquiry into the legal sufficiency of the complaint, not an analysis of potential defenses . . ." *Occupy Columbia v. Haley*, 738 F.3d 107, 116 (4th Cir.

2013).  Nevertheless, dismissal "is appropriate when the face of the complaint clearly reveals the existence of a meritorious affirmative defense."  *Id.*; *see Mohammadi v. Michael*, RDB-14-2197, 2015 WL 1409649, at *4 n.10 (D. Md. Mar. 26, 2015).

The defense of absolute immunity extends to "officials whose special functions or constitutional status requires complete protection from suit."  *Harlow v. Fitzgerald*, 457 U.S. 800, 807 (1982); *see also Day v. Johns Hopkins Health System Corp., et al.*, ___ F.3d ____, 2018 WL 5306886, at *2 (4th Cir. Oct. 26, 2018) (addressing Witness Litigation Privilege and stating: "Our law affords absolute immunity to those persons who aid the truth-seeking mission of the judicial system"); *Savage v. Md.*, 896 F.3d 260, 268 (4th Cir. 2018) ("The public trust of the prosecutor's office would suffer were the prosecutor to have in mind his own potential damages liability when making prosecutorial decisions—as he might well were he subject to § 1983 liability." (quotation marks and citation omitted)).  Certain officials—including judges, legislators, and prosecutors—are entitled to such immunity from suits for money damages in their individual capacities.  *See, e.g., Nixon v. Fitzgerald*, 457 U.S. 731, 751-52 (1982) (discussing presidential immunity); *Stump v. Sparkman*, 435 U.S. 349, 363 (1978) (discussing judicial immunity); *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976) (discussing prosecutorial immunity).

In *Ostrzenski v. Seigel*, 177 F.3d 245 (4th Cir. 1999), the Fourth Circuit explained that, although the "prospect of liability for damages encourages public officials to perform their assignments appropriately," there are circumstances when the "threat of liability for damages hinders, rather than advances, the prospects that public officials will perform their duties in the public interest. The special functions of some governmental officials require that they be exempted completely from such liability." *Id.* at 248-49 (citations omitted). These officials

include "judges performing judicial acts within their discretion . . . and 'quasi-judicial' agency officials whose duties are comparable to those of judges . . . when adequate procedural safeguards exist." *Id.* at 249; *see also Dyer*, 187 F. Supp. 3d at 612; *Dukes v. Maryland*, Civ. No. CCB-11-876, 2011 WL 4500885, at *6 (D. Md. Sept. 27, 2011) ("'[Q]uasi-judicial immunity' is extended when (1) the . . . official's functions are similar to those of a judge, (2) a strong need exists for the official to perform essential functions for the public good without fear of harassment and intimidation, and (3) adequate procedural safeguards exist to protect against constitutional deprivations." (citing *Ostrzenski*, 177 F.3d at 249)).

"Federal courts have extended quasi-judicial immunity to a wide range of administrative officials performing essentially adjudicative functions." *Dyer*, 187 F. Supp. 3d at 612; *see, e.g.*, *Butz v. Economou*, 438 U.S. 478, 513-14 (1978) (extending quasi-judicial immunity to federal ALJs); *Mathis v. Goldberg*, 538 F. App'x 310, 311 (4th Cir. 2013) (per curiam) (extending quasi-judicial immunity to state arbitrator); *Richter v. Connor*, 21 F.3d 423, 1994 WL 118011, at *4-5 (4th Cir. 1994) (per curiam, unpublished table decision) (extending quasi-judicial immunity to medical board members and staff assistants); *Dukes*, 2011 WL 4500885, at *6 (extending quasi-judicial immunity to hearing examiner with the Maryland Department of Labor, Licensing, and Regulation ("DLLR") and to the chair of the DLLR Board of Appeals); *Traversa v. Ford*, 718 F. Supp. 2d 639, 646-47 (D. Md. 2010) (extending quasi-judicial immunity to members of the Maryland Commission on Human Relations); *cf. Mua v. Md. Office of the Attorney Gen.*, PJM 14-2070, 2016 WL 1258469, at *10 n.12 (D. Md. Mar. 31, 2016) (declining to grant plaintiff leave to plead claims against individual State Board members and noting that such members "are very likely protected by quasi-judicial immunity").

The Fourth Circuit has identified several reasons for this rule, *Ostrzenski*, 177 F.3d at 249 (citation omitted):

> (1) the boards perform essentially judicial and prosecutorial functions; (2) there exists a strong need to ensure that individual board members perform their functions for the public good with harassment and intimidation; and (3) there exist adequate procedural safeguards under state law to protect against unconstitutional conduct by board members without reliance on private damages lawsuits.

Dr. Hyde does not contest that, in general, Board members are entitled to such immunity. ECF 69 at 5. Rather, Dr. Hyde maintains that Dr. Chu "acted outside the scope of his authority" in revoking plaintiff's dental license. ECF 69 at 5 (citing ECF 46, ¶ 8). In this way, Dr. Hyde claims that Dr. Chu's conduct abrogated his immunity.

Plaintiff's arguments are unavailing. A review of the allegations in the suit reveals that, as President of the Board, Dr. Chu exercised his quasi-judicial authority in conducting a hearing and rendering the Board Decision. Dr. Chu's conduct, about which plaintiff complains, stemmed from Board proceedings and involved a quasi-judicial function. Plaintiff has not alleged any facts to support a basis to abrogate Dr. Chu's immunity, whether absolute or quasi-judicial.

## V.    Conclusion

For the reasons stated above, I shall GRANT Friends' Motion to Dismiss (ECF 61), as well as Dr. Chu's Motion to Dismiss (ECF 63).

An Order follows.


Date:   November 5, 2018                                     _____/s/_____
                                                            Ellen Lipton Hollander
                                                            United States District Judge